## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CAROL THOMAS,
         Plaintiff,

v.

DRESSER, INC. - MASONEILAN,
         Defendant.

Civil Action No. 05-10726 PBS

## DEFENDANT'S MOTION TO STAY PROCEEDINGS
## PENDING USE OF MANDATORY DISPUTE RESOLUTION PROGRAM
## AND INCORRPORATED MEMORANDUM OF LAW

Defendant, Dresser, Inc. - Masoneilan Division ("Dresser"), by and through its undersigned counsel, hereby moves pursuant to 9 U.S.C. §§ 1, et seq. and M.G.L. c. 251 §§ 1, et seq., for an Order referring all disputes against Defendant raised in this action to Dresser's mandatory dispute resolution program, and staying further proceedings.

### I.     SUMMARY OF ARGUMENT

Plaintiff, a former Human Resources Specialist of Dresser, alleges that her termination of employment was due to race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and G.L. Chapter 151B. The conduct alleged in this action relates solely to Plaintiff's employment relationship with Dresser. Dresser has established a written policy and effectively communicated the policy to its employees, including Plaintiff, requiring that all employment disputes be submitted to its Dispute Resolution Program ("DRP"), and stating that the DRP shall be the **exclusive, final and binding** method by which workplace disputes are resolved. As an employee of Dresser during and *after* the announcement to continue the mandatory DRP in June 2001, Plaintiff agreed to resolve any and all workplace disputes through the DRP. Additionally, as a Human Resources employee, Plaintiff was responsible for informing

and explaining the DRP to new employees, ensuring that all new employees signed the DRP

Agreement as a condition of employment, and hanging up DRP posters in and around the Avon

facility where she worked to make current employees aware of the program. In short, Plaintiff

had knowledge of DRP, understood it was binding on her when she continued to be employed by

Dresser after its adoption, and even explained to other employees the terms of DRP as a

condition of employment. Given these facts, and the strong public policy favoring arbitration as

set forth in the Federal Arbitration Act and the Massachusetts Arbitration Act, this Court should

allow Dresser's Motion to Stay Pending Use of DRP. The Declarations of Chad Reed and

Robert P. Rose are submitted herewith in support of Dresser's Motion.[1]

## II.    STATEMENT OF FACTS

1.    Plaintiff filed her complaint on or about April 12, 2005, alleging that Dresser

discriminated against her on the basis of her sex and race when it terminated her employment in

August of 2004. (See Plaintiff's Complaint.)

2.    Plaintiff was hired by Dresser Industries, Inc. in or about August of 1990 as an

engineering secretary. She was promoted to Human Resources Administrator in 1992. At all

times relevant, Plaintiff was employed in the Avon, Massachusetts facility. (See Plaintiff's

Complaint.)

3.    In 1998, the Halliburton Company ("Halliburton") merged with Dresser

Industries, Inc. After the merger, Halliburton rolled out its DRP to all persons employed by

Dresser Industries, Inc. and also arranged for the training of responsible Human Resources

Managers for all of Dresser Industries, Inc.'s facilities to explain the mandatory and exclusive

use of the program. Those managers were then responsible for rolling out the program within

---

[1] The Declaration of Chad Reed is hereinafter referenced as "Reed Dec. ¶ ___."). The Declaration of Robert P. Rose is hereinafter referenced as "Rose Dec. ¶ ___.").

their organization. All persons employed by Dresser Industries, Inc. were then subject to the DRP as a condition of continued employment. (<u>See</u> Reed Dec., ¶ 3.)

4.    In April of 2001, Halliburton sold a portion of Dresser Industries, Inc., which included its Avon facility. The portion that was sold was renamed Dresser, Inc., and Plaintiff became an employee of Dresser, Inc. (<u>See</u> Reed Dec., ¶ 4.)

5.    In June of 2001, Dresser, Inc. announced to all of its employees that it would continue with the mandatory DRP. (<u>See</u> <u>Exhibit 1</u> to Reed Dec.). Indeed, Plaintiff received a copy of this written announcement. (<u>See</u> <u>Exhibit F</u> to Rose Dec.)

6.    On or about July 6, 2001, Dresser, Inc. sent another letter to all employees about the DRP. The letter was sent with two booklets and one brochure regarding the DRP, which Plaintiff received. (<u>See</u> <u>Exhibits 2-5</u> to Reed Dec.; Reed Dec. ¶ 9.)

7.    DRP has four options an employee can use in any order, depending on the nature of the dispute. The four options are (1) the Open Door Option; (2) The Internal Conference Option; (3) Mediation; and (4) Arbitration. The DRP booklet states that the four-option program is the **exclusive means of resolving workplace disputes for legally protected rights.** (emphasis added). (<u>See</u> <u>Exhibit 4</u>, page 5 to Reed Dec.) The booklet further states that an employees who accepts or continues employment at Dresser, by accepting compensation for employment, agrees to resolve all claims against Dresser through this process rather than through the court system. (<u>See</u> <u>id.</u>)

8.    Both the mediation and arbitration options utilize outside organizations such as the American Arbitration Association, the Judicial Arbitration and Conciliation Services, and the Center for Public Resources. (<u>See</u> Reed Dec. ¶ 4.)

9.      In explaining who is covered by the DRP, the booklet states that you are automatically covered (no signature is required) if you:

     a.  Accept employment;

     b.  Continue your current employment after the effective date of the DRP's adoption by your business unit; or

     c.  Have been covered under a previous version of the DRP, as communicated to in a mail-out by the Halliburton Company or Dresser.

See Exhibit 4, page 5 to Reed Dec.

10.     In the Questions & Answers section of the Options for Resolution Booklet (See Exhibit 4, page 14 to Reed Dec.), it states the following:

**Who uses the DRP and for what kind of problems?**

All levels of employees may use the DRP. You can resolve concerns about termination, conflicts with co-workers, retaliation for raising a concern or complaint, disciplinary or supervisory issues, safety concerns, discrimination, racial or sexual harassment, unfair treatment and morale on the job.

**Does having this Program mean I cannot sue Dresser?**

If you are covered by the Program and you file a lawsuit, Dresser attorneys will go before the court, tell the court of the Dresser Dispute Resolution Program, and ask that the case be dismissed and sent back to the Program.

11.     In February of 2002, Plaintiff was promoted to Human Resources Specialist. In this position, Plaintiff was responsible for hanging up DRP posters in the Avon facility where she worked to make current employees aware of DRP, and also was responsible for ensuring that any new employee in the Avon facility signed the DRP Agreement as a condition of continued employment. (See Reed Dec. ¶ 10; Exhibit 6 to Reed Dec.)

12.     In the summer of 2002, Dresser conducted equal employment opportunity training for all employees in the Avon facility, which included specific references to the DRP, its implementation, terms, scope and other topics. (See Exhibit 7 to Reed Dec.)

13.     As an employee in the Human Resources Department, Plaintiff's job would have been to understand, explain and utilize the DRP for employees, both current and new. (See Reed Dec. ¶ 13.)

14.     Indeed, Plaintiff was responsible for including the DRP materials with new hire packets that she distributed to all new employees. (See Exhibits A and B to Declaration of Robert P. Rose.) Plaintiff also was responsible for ensuring that all new hires signed the DRP Agreement as a condition of continued employment. (See Exhibits C and D to Rose Dec.)

15.     Plaintiff had continuous exposure to the details of DRP since 1998. First, she received DRP materials when Halliburton merged with Dresser Industries, Inc. in 1998 and then again, when the Avon facility became part of Dresser, Inc. in 2001. (See Exhibits 1-5 to Reed Dec.) Second, due to her position as HR Administrator, and then HR Specialist, Plaintiff was responsible for distributing and explaining the DRP to new employees and ensuring they signed the DRP Agreement as a condition of employment. (See Exhibits 1-4 to Rose Dec.) Plaintiff also was responsible for hanging up DRP posters in the Avon facility where she worked to make current employees aware of the program. (See Exhibit 6 to Reed Dec.) Finally, the DRP materials which Plaintiff not only received, but also distributed to employees, explicitly state that it applies to all current and new employees, and shall be the exclusive and mandatory way to resolve workplace disputes. (See Exhibit 4 to Reed Dec.)

## III.   LEGAL ANALYSIS

### A.   The Federal Arbitration Act Supports the Arbitration of Employment-Related Claims

The Federal Arbitration Act ("FAA") supports the use of arbitration to resolve disputes arising in the workplace. The FAA provides as follows regarding the use of arbitration to resolve workplace issues:

> [a] written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

See 9 U.S.C. § 2.

In Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 270 (1995), the U.S. Supreme Court held that Congress' basic purpose in enacting the FAA was to overcome judicial suspicion of arbitration agreements. See also Perry v. Thomas,482 U.S. 483, 490 (1987) (the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). In light of this policy, the U.S. Supreme Court "has construed the FAA as establishing a liberal policy in favor of arbitration." See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); Perry v. Thomas, 482 U.S. at 490.

Under the FAA, courts are required to "rigorously enforce agreements to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985). Indeed, the FAA requires that federal courts stay judicial proceedings if the issues involved in such proceedings are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such

> suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such an
> agreement, ***shall*** on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance with
> the terms of the agreement.

9 U.S.C. § 3 (emphasis added).

Thus, the FAA leaves no place for the exercise of discretion by the court, but, instead mandates that courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement exists. See Dean Witter, 470 U.S. at 218. In fact, the FAA prohibits state courts from requiring a "judicial forum for the resolution of claims which the contracting parties agreed to DRP by arbitration." See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Additionally, the FAA preempts all state arbitration statutes involving interstate commerce to the extent that such laws "affect the validity, enforceability and interpretation of the agreement to arbitrate or . . . in any way limit 'the broad principle of enforceability of private agreements to arbitrate.'" Baxter Healthcare Corp. v. Harvard Apparatus, Inc., 35 Mass. App. Ct. 204, 205, n.2 (1993).

Moreover, it is well-settled that agreements to arbitrate claims in the employment context are valid and enforceable. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context...Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.") (citations omitted); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20,(1991). Where an arbitration agreement falls within the purview of the FAA, the act governs the arbitrability of the dispute in State or Federal Court. Mugnano-Bornstein, 42 Mass. App. Ct.

347, 358, *rev. denied*, 425 Mass. 1102 (1997). Accordingly, the FAA mandates that this Court stay the instant matter pending arbitration. See 9 U.S.C. §3.

**B.    State Law Requires Referral To DRP**

Plaintiff's claims under G.L. chapter 151B are also barred under the Massachusetts Uniform Arbitration Act. The Uniform Arbitration Act ("UAA" or the "Act"), enacted by the Massachusetts legislature in 1960, and codified as M.G.L. c. 251 §§ 1, et seq., manifests a liberal policy favoring arbitration agreements. See Danvers v. Wexler Constr. Co., 12 Mass. App. Ct. 160, 163 (1981) ("Our courts have consistently held that the ... statutory provisions [of M.G.L. c. 251] express a strong public policy favoring arbitration as an expeditious alternative to litigation for settling ... disputes"). For example, Section 1 of the Act states: "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable...." M.G.L. c. 251 § 1. Moreover, Section 2(d) of the UAA requires that Massachusetts state courts order arbitration and stay judicial proceedings if they find a valid agreement to arbitrate. M.G.L. c. 251 §§ 2(a), 2(d)  ("any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefore has been made under this section . . .)  "The foregoing statutory provisions express a strong public policy favoring arbitration as an expeditious alternative to litigation. . . . " Weiss v. Atholl, 1998 Mass. Super. LEXIS 673, citing Danvers, 12 Mass. App. Ct. at 163; Section 2 of the Act.

Following the statute's directive, Massachusetts courts have consistently compelled arbitration, recognizing that "the arbitration procedure, when selected by the parties to a contract, should be speedy and not subject to delay and obstruction in the courts." Danvers, 12 Mass. App.

Ct. at 163, (*citing* <u>Quirk v. Data Terminal Sys.</u>, 379 Mass. 762, 767 (1980)); <u>see also</u> <u>Mugnano-Bornstein v. Crowell</u>, 42 Mass. App. Ct. at 350-51.

### C.    This Court Should Stay This Matter Pending Use Of DRP

Where a plaintiff files an action in a judicial forum after having previously agreed to resolve his/her claims through arbitration, a court must stay the judicial proceedings. The FAA requires the issuance of a stay where, as here, the parties to the litigation previously entered into an agreement to arbitrate disputes. Section 3 of the FAA mandates the issuance of a stay of proceedings under such circumstances:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

<u>See</u> 9 U.S.C. § 3 (emphasis added).

The claims in Plaintiff's Complaint are subject to arbitration, as set forth more fully below. Accordingly, this Court should stay this matter pending arbitration, pursuant to the FAA (9 U.S.C. §3), federal and Massachusetts policy favoring arbitration.

### D.    A Stay of Proceedings is Appropriate in The Present Case

In considering whether to enforce an arbitration agreement, courts undertake a two-step inquiry. <u>See</u> <u>Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626-628 (1985). First, the court must determine "whether the parties entered into a valid and enforceable agreement to arbitrate." <u>See, e.g.</u>, <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. at 626; <u>Paul Revere Variable Annuity Ins. Co. v. Zang</u>, 81 F. Supp. 2d 227, 229 (D. Mass. 2000); <u>Danvers</u>, 12 Mass. App. Ct. at 163. Second, the court must ascertain whether the

claims raised fall within the scope of the arbitration agreement. <u>Mitsubishi</u>, 473 U.S. at 627-28; <u>Danvers</u>, 12 Mass. App. Ct. at 163. Once these inquiries are satisfied, the dispute should be submitted to DRP. <u>Danvers</u>, 12 Mass. App. Ct. at 163.

In the present case, both prongs of this standard are satisfied. For that reason, this Court should issue a stay of the instant proceedings.

**1.      The Parties Have a Valid and Enforceable Agreement to Use DRP**

Plaintiff was employed at Dresser when the DRP was introduced and implemented. Indeed, in addition to receiving materials on the DRP, Plaintiff herself introduced new employees to DRP, explained the program to them, ensured that all new employees signed the DRP Agreement as a condition of employment, and also informed current employees about the DRP through posters and literature she made available. Plaintiff cannot credibly claim that she was unaware of DRP or of its terms.[2] By its terms, the DRP mutually binds the parties to resolve claims arising between them using the program. Further, the mutuality of promises to arbitrate is sufficient consideration to make the agreement valid. <u>Deluca v. Bear Stearns & Co.</u>, 175 F. Supp. 2d 102, 112-113 (D. Mass. 2001) In addition, Plaintiff's continued employment constitutes sufficient consideration to render the agreement enforceable. <u>See id.</u> at 109-112 (holding that continued employment after an arbitration agreement is entered into is sufficient consideration to

---

[2] Plaintiff may contend that she is not bound by the DRP because she did not sign the DRP Agreement. However, case law abounds that one need not sign an employer's policy in order for the parties to be bound by it. <u>See, Caley v. Gulfstream</u>, 333 F. Supp. 2d 1367 (N.D. Ga. 2003); <u>May v. Higbee Co.</u>, 372 F.3d 757 (5th Cir. 2004); <u>Burton v. Citigroup</u>, 2004 US Dist. LEXIS 10627 (N.D. Tex. 2004); <u>Baptist Health Sys. v. Mack</u>, 2003 Ala. LEXIS 114; <u>In re: Haliburton</u>, 80 S.W.3d 566 (Tex. 2002); Tinder v. Pinkerton Sec., 305 F.3d 728 (7th Cir. 2002); <u>Hightower v. GMRI</u>, 2001 US App LEXIS 24414 (4th Cir. 2001); <u>Winfrey v. Bridgestone/Firestone</u>, 1999 US App LEXIS 33616 (8th Cir. 1999). Further, Massachusetts courts have consistently found contracts to exist between employees and employers absent signatures. <u>See Jackson v. Action for Boston Community Dev., Inc.</u>, 403 Mass. 8 (1988); <u>see also</u> O'Brien v. New England Tel. And Tel. Co., 422 Mass. 686 (1996).

render the agreement enforceable); O'Brien, 422 Mass. at 691. Thus, the parties did in fact agree to utilize DRP, which culminates in binding arbitration, to resolve the claims at issue in this case.

### 2.    DRP Covers the Claims Asserted by Plaintiff in the Instant Lawsuit

DRP also covers the claims alleged by Plaintiff in her Complaint (race and sex discrimination). Specifically, the DRP Booklet explicitly provides that DRP applies to claims including, but not limited to, the following: "the employment or potential reemployment of an Employee, including the terms, conditions, or termination of such employment with the Company...any other matter related to or concerning the relationship between the Employee and the Company, including, by way of example and without limitation, **allegations of: discrimination based on race, sex**, religion, national origin, age, veteran status or disability..." (emphasis added) (See Exhibit 3, attached to Reed Dec.)

Without doubt, the plain language of DRP covers all of Plaintiff's claims (i.e., sex and race discrimination pursuant to G.L. c. 151B and Title VII). In any case, "any doubts regarding arbitrability should be resolved in favor of coverage unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Mugnano-Bornstein v. Crowell, et. al., 42 Mass. App. Ct. at 351, 677 N.E. 2d 242 (1997); Quirk, 379 Mass. at 765; Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983); Dean Witter, 470 U.S. at 218; Cone, 460 U.S. at 24-25.

The scope of the coverage of DRP is extremely broad, and expressly requires Plaintiff to submit the exact claims she has brought to the program. Moreover, courts are required to resolve any doubts about the scope of arbitrable issues in favor of arbitration. Thus, no issue as to the arbitrability of these claims exists in the present case.

For the above reasons, Plaintiff must arbitrate the claims brought in the instant lawsuit. Therefore, this Court should stay Plaintiffs' claims pending arbitration, per the parties' agreements.

## IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court stay this matter and refer Plaintiff's claims to DRP, or in the alternative, dismiss the instant matter.

Respectfully submitted,

DRESSER, INC. – MASONEILAN DIVISION
By its attorneys,


/s/ Kavita M. Goyal
Stephen T. Paterniti (BBO # 564860)
Kavita M. Goyal (BBO #654013)
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
(617) 367-0025

Date: June 13, 2005

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CAROL THOMAS,
        Plaintiff,

v.                                                    Civil Action No. 05-10726 PBS

DRESSER, INC. - MASONEILAN,
        Defendant.

## DECLARATION OF CHAD REED

I, Chad Reed, being on oath depose and say as follows:

1.      I am presently employed by Dresser, Inc. as the Director of Human Resources for the Houston Operations of Dresser Flow Solutions. Prior to being assigned to Dresser Flow Solutions in October 2003, and beginning in June of 2001, I was the Director of Employee Relations for Dresser, Inc., and in that role was responsible for the administration of the Dresser Dispute Resolution Program ("DRP") and of employee disputes in general.

2.      Prior to Dresser Industries, Inc. merging with the Halliburton Company in [Month] 1998 I was the HR Counsel for Dresser Industries, Inc. Immediately after the merger, I became a Senior Counsel within the Employment Law Section of the Halliburton Company ("Halliburton").

3.      After the merger, I was aware that Halliburton rolled out the Halliburton Dispute Resolution Program ("DRP") to all persons employed by Dresser Industries, Inc. I was also aware that Halliburton mailed out information regarding its DRP to all Dresser employees, and Halliburton arranged for the training of responsible Human Resources Managers for all of Dresser Industries, Inc.'s facilities to explain the mandatory and exclusive use of the program. Those managers were then responsible for rolling the program out within their organization. All

persons employed by Dresser Industries, Inc. were then subject to the Halliburton DRP as a condition of continued employment.

4.    DRP has four options an employee can use in any order, depending on the nature of the dispute. The four options are (1) the Open Door Option; (2) The Internal Conference Option; (3) Mediation; and (4) Arbitration.  Both the mediation and arbitration options utilize outside organizations such as the American Arbitration Association, the Judicial Arbitration and Mediation Services, and the Center for Public Resources.

5.    In April of 2001, Halliburton sold the Dresser Equipment Group, Inc. (renamed Dresser, Inc.) which was a portion of Dresser Industries, Inc., and which included its Avon, Massachusetts facility.  Shortly thereafter, I went with the divestiture to become the Director of Employee Relations for Dresser, Inc.  Dresser, Inc. is a Delaware corporation with its principal place of business and headquarters in Addison, Texas.

6.    I am familiar with Carol Thomas.  She was a Human Resources Specialist at Dresser, Inc.'s Avon facility.  She had been employed by Dresser, Inc. since 1991, and was employed at the time of the Halliburton merger in 1998 and during the sale of Dresser, Inc. in April of 2001.

7.    In June of 2001, Dresser, Inc. announced to all of its employees that it would continue mandatory DRP by adopting the Halliburton program, (with only minor modifications), for Dresser, Inc. Attached as Exhibit 1 is a true and accurate copy of the written announcement sent to all employees.

8.    On or about July 6, 2001, I had a mailing service send a letter to all Dresser, Inc. employees about the Dresser DRP.  Attached as Exhibit 2 is a true and accurate copy of that correspondence. Along with this correspondence, I enclosed the following DRP materials: (a) a Booklet entitled "Dispute Resolution Plan & Rules", a true and accurate copy of which is

attached as Exhibit 3; (b) a Booklet entitled "Options for Resolution", a true and accurate copy of which is attached as Exhibit 4; and (c) a Brochure entitled "Options for Resolution", a true and accurate copy of which is attached as Exhibit 5.

9.      As an employee of Dresser, Inc., Carol Thomas would have received the mailing I sent out in July of 2001.

10.      I also instructed each of the Human Resources representatives in each facility to hang up posters relating to the DRP in and around the workplace to educate and make employees aware of DRP. Upon information and belief, in July of 2001, Carol Thomas, who was the only human resources representative at the Avon facility at the time, was responsible for hanging up the posters in the Avon facility. When I visited each facility to conduct training, I do not recall any of the facilities not having a poster on DRP posted in its facility. Attached as Exhibit 6 is a true and accurate copy of the poster that was hung in all of the Dresser, Inc. facilities.

11.      In the summer of 2002, I visited the Avon facility where Carol Thomas worked and conducted equal employment opportunity training for all employees, which included specific references to DRP, its implementation, terms, scope and other topics. Attached as Exhibit 7 is a true and accurate copy of the Power Point slide I presented during my discussion of DRP.

12.      It is my belief that the materials and my training made it clear that utilization of the DRP for employment disputes was mandatory and applied to all current and future employees of Dresser, Inc., as a condition of continued employment.

13.      In my role as Director of Employee Relations. I made it clear to the Human Resources organization that it was their job to understand, explain and utilize the program for their employees and new hires.

Executed under the penalties of perjury on this 9th day of June, 2005.

W. Chad Reed

EXHIBIT 1



**James F. Riegler**
*Vice President Human Resources*

June 2001

**To:    All Dresser, Inc Non-union Represented Employees**

Re:    Dresser, Inc. Dispute Resolution Program

During the process of Dresser, Inc. being divested by Halliburton Company, each Dresser, Inc. business unit held employee meetings to discuss which business practices would change under the new ownership and which practices would remain the same. One item addressed in the meetings was the Dispute Resolution Program. Company representatives confirmed Dresser's commitment to continue, without interruption, this valuable process that was established and rolled out during Halliburton's ownership.

Now that the sale is complete Dresser, Inc. is in the process of republishing the brochures and manuals that describe and explain the Dresser, Inc. Dispute Resolution Program. Although there is very little difference between this program and the Halliburton program, the new publications will stress the program benefits and explain the minor process changes that have been customized to fit the Dresser, Inc. business unit structure.

Later this month you will receive a handout or see posters in your facility providing you with the new contact information as the Dresser, Inc. program picks up where Halliburton left off. On July 1, 2001 the Dresser, Inc. program will be operating independently from Halliburton. We are confident that you will find this program valuable and easy to use.

In the months that follow, Dresser, Inc. will be mailing you the updated Dispute Resolution Program manuals that summarize the program features, as well as a re-published version of the Plan Rules. We encourage you to read the documents carefully, so that you will be able to take full advantage of the programs benefits.

Again, welcome to the "New" Dresser, Inc. and we hope that you will take advantage of the benefits offered by the Dresser, Inc. Dispute Resolution Program.

Very truly yours,

James F. Riegler
Vice President Human Resources

# EXHIBIT 2



DRESSER, INC.

Millennium I Bdg  15455 N  Dallas Parkway • Addison, TX 75001 • Phone: 972/361-9800 • Fax: 972/478-5088 • Email chad reed@dresser.com

**W. Chad Reed**
Director, Employee Relations

July 6, 2001

Dear Dresser colleague:

We are pleased to announce the continuation of a valuable program introduced to us during the time we were affiliated with the Halliburton Company.  Enclosed you will find information on the Dresser, Inc. Dispute Resolution Program (DRP), options for resolving work-related problems.  I encourage you to read through this material and to keep it as a ready reference.   If, after reading this material, you have questions about DRP, please contact your Business Unit Human Resources Director, the DRP Helpline at 1-866-560-4951 or me.

We believe this program helps create an environment of open communications and that, in turn, helps enhance teamwork.  Because we are focused on helping Dresser achieve its high performance goals, we are eager to provide options for resolving differences.

Sincerely,

**W. Chad Reed**

EXHIBIT 3

Dispute Resolution
# Plan & Rules

**DRESSER** Dispute Resolution Program

Dispute Resolution
# Plan & Rules

# The Dresser, Inc.
# Dispute Resolution Plan

1. **Purpose and Construction**

   The Plan is designed to provide a program for the quick, fair, accessible, and inexpensive resolution of Disputes between the Company and the Company's present and former Employees and Applicants for employment, related to or arising out of a current, former or potential employment relationship with the Company. The Plan is intended to create an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms. It is not intended either to abridge or enlarge substantive rights available under applicable law. The Plan contractually modifies the "at-will" employment relationship between the Company and its Employees, but only to the extent expressly stated in this Plan. The Plan should be interpreted in accordance with these purposes.

2. **Definitions**

   A. "AAA" means the American Arbitration Association.

   B. "JAMS" means Judicial Arbitration and Mediation Services.

   C. "CPR" means the Center for Public Resources.

   D. The "Act" means the Federal Arbitration Act, 9 U.S.C. § 1, et seq., as amended from time to time.

   E. "Company" means Sponsor and every subsidiary of Sponsor, any Electing Entity, any entity or person alleged to have joint and several liability concerning any Dispute, and all of their directors, officers, employees, and agents, every plan of benefits, whether or not tax-exempt, established or maintained by any such entity, the fiduciaries, agents and employees of all such plans, and the successors and assigns of all such entities, plans and persons; provided, however, that in the case of an Electing Entity, "Company" shall include the Electing Entity only to the extent provided in the Electing Entity's agreement to be bound by the Plan.

1

F.   "Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan, or between a person bound by the Plan and a person or entity other wise entitled to its benefits, including, but not limited to, any matters with respect to:

1    this Plan;

2.   the employment or potential reemployment of an Employee, including the terms, conditions, or termination of such employment with the Company;

3    employee benefits or incidents of employment with the Company;

4.   any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; workers' compensation retaliation; defamation; infliction of emotional distress; or status, claim or membership with regard to any employee benefit plan;

5    an Applicant's application for employment and the Company's actions and decisions regarding such application; and

6.   any personal injury allegedly incurred in or about a Company workplace.

"Dispute" includes all such matters regardless of when the events on which they are based occurred, including matters based on events occurring before the Employee became subject to this Plan (so long as such disputes were not previously asserted in a judicial forum) or after termination of the employment relationship

G.   "Electing Entity" means any legal entity, which has agreed to be bound by the Plan as provided herein.

H.   "Employee" means any person who is or has been in the employment of the Company on or after the effective date of this Plan, whether or not employed at the time a claim is brought with respect to a Dispute, residing in the United States, or otherwise subject to the laws of the United States or any state, municipality, or other political subdivision of the United States.

I.   "Applicant" means any person who is seeking or has sought employment with the Company after the effective date of this Plan.

J.   "Party" means, with respect to a particular Dispute, affected persons and/or entities bound by this Plan

K.   "Plan" means this Dresser, Inc. Dispute Resolution Plan, as amended from time to time

L.   "Rules" means the Dresser, Inc Dispute Resolution Plan Rules, as amended from time to time, which are applicable to mediation and arbitration

M    "Sponsor" means Dresser, Inc., a Delaware Corporation.

3.   **Name, Application and Coverage**

A.   The Plan shall be referred to as the "Dresser, Inc. Dispute Resolution Plan." Alternatively, it may be referred to as the "Dresser Dispute Resolution Program" or the "Dispute Resolution Program."

B.   Until revoked by Sponsor pursuant to this Plan, this Plan applies to and binds the Company, each Employee and Applicant and the heirs, beneficiaries and assigns of any such person or entity; provided, however, that this Plan shall not apply to any Employee in a unit of Employees represented by a labor organization, or to the Company with respect to such employees, except to the extent permitted in an applicable collective bargaining agreement or lawfully imposed by the Company when no collective bargaining agreement is in effect

C.   Except as provided for herein, this Plan applies to any Dispute

2

3

D. Notwithstanding anything to the contrary in this Plan, the Plan does not apply to claims for workers' compensation benefits or unemployment compensation benefits.

E. Mediation and arbitration are only available for Disputes involving legally protected rights.

F. Notwithstanding any other provision hereof, any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under the Plan.

4. **Resolution of Disputes**

All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Plan and the Rules.

5. **Confidentiality**

A. The Dispute Resolution Program ("Program"), its Administrator, any subordinate administrators, the staff of the Program and any other person conducting conferences or serving as an impartial third party on behalf of the Program in any in-house dispute resolution process conducted under the auspices of the Program, will hold matters reported under the Program and related communications in confidence, in keeping with the Standards of Practice and the Code of Ethics of The Ombudsman Association. The Code of Ethics and the Standards of Practice of The Ombudsman Association are incorporated into this plan by reference and appended.

For purposes of requests by or subpoenas from any party that the Program Administrator or any subordinate administrators, or any member of the staff of the Program or person conducting conferences or serving as an impartial third party on behalf of the Program in any in-house dispute resolution process conducted under the auspices of the Program, provide testimony in any internal or external investigation, administrative hearing, or arbitration or litigation proceeding, the confidentiality standards described in this section attach to the Dispute Resolution Program, rather

than any individual disputant. This means that only the Program, rather than any individual disputant, may waive confidentiality, and the Program may only waive confidentiality, even upon request or subpoena by a disputant, under circumstances consistent with The Ombudsman Association Code of Ethics and Standards of Practice.

B. No employee shall be subject to any form of discipline or retaliation for initiating or participating in good faith in any process or proceeding under this Plan.

6. **Amendment**

A. This Plan may be amended by Sponsor at any time by giving at least 10 days notice to current Employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules.

B. Sponsor may amend the Rules at any time by serving notice of the amendments on AAA, JAMS, and CPR. However, no amendment of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules.

7. **Termination**

This Plan may be terminated by Sponsor at any time by giving at least 10 days notice of termination to current Employees. However, termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination.

8. **Applicable Law**

A. The Act shall apply to this Plan, the Rules, and any proceedings under the Plan or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator, or settlements under the Plan or the Rules.

B. Other than as expressly provided herein, or in the Rules, the substantive legal rights, remedies, and defenses of all Parties are preserved. In the case of arbitration, the arbitrator shall have the

4

5

authority to determine the applicable law and to order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding

C. Other than as expressly provided herein, or in the Rules, the Plan shall not be construed to grant additional substantive, legal, or contractual rights, remedies or defenses which would not be applied by a court of competent jurisdiction in the absence of the Plan, including applicable time periods in which to bring such claims.

D. Notwithstanding the provisions of the preceding subsection, in any proceeding before an arbitrator, the arbitrator, in his discretion, may allow a prevailing Employee or Applicant a reasonable attorney's fee as part of the award. The discretion to allow an award of fees under this subsection is in addition to any discretion, right or power that the arbitrator may have under applicable law. However, any award of fees shall be reduced by any amounts which have been or will be paid by the Dresser Employee Legal Assistance Plan

## 9. Administrative Proceedings

A. This Plan shall apply to a Dispute pending before any local, state or federal administrative body or court unless prohibited by law.

B. Participation in any administrative or judicial proceeding by the Company shall not affect the applicability of the Plan to any such Dispute upon termination of the administrative or judicial proceedings. A finding, recommendation or decision by an administrative body on the merits of a Dispute shall have the same legal weight or effect under the Plan as it would in a court of competent jurisdiction.

## 10. Exclusive Remedy

Proceedings under the Plan shall be the exclusive, final and binding method by which Disputes are resolved

## 11. Electing Corporations

A. Corporations or other legal entities, not otherwise Parties, may elect to be bound by this Plan by written agreement with Sponsor.

B. Election may be made only as to some types of Disputes, or only as to some persons, in the discretion of Electing Entity.

## 12. Effective Date

The effective date of this Plan shall be April 10, 2001, as continued and adopted from the Halliburton Company Dispute Resolution Plan, as amended as of August 15, 1999

## 13. Severability

The terms of this Plan and the Rules are severable. The invalidity or unenforceability of any provision therein shall not affect the application of any other provision. Where possible, consistent with the purposes of the Plan, any otherwise invalid provision of the Plan or the Rules may be reformed and, as reformed, enforced.

## 14. Administration

Sponsor shall appoint one or more persons to administer the Plan who shall be known as the "Dispute Resolution Plan Administrator." The Dispute Resolution Plan Administrator shall be responsible for the management and administration of the Plan.

## 15. Assent

Employment or continued employment after the Effective Date of this Plan constitutes consent by both the Employee and the Company to be bound by this Plan, both during the employment and after termination of employment. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by this Plan.

# The Dresser, Inc.
# Dispute Resolution Rules

## 1. Definitions

All definitions included in the Dresser Dispute Resolution Plan apply to these Rules

## 2. Application

A. If different rules are applicable to a specific class of Disputes, and have been adopted by Sponsor and served on AAA, JAMS, or CPR, these Rules shall not apply to such class of Disputes

B. These Rules apply in the form existing at the time proceedings are initiated under them

C. To the extent consistent with these Rules, the Employment Dispute Resolution Rules of AAA, JAMS, or CPR also apply to all proceedings governed by these Rules

## 3. Initiation of the Process

A. A party may initiate proceedings under these Rules at any time, subject to any defenses, including those applicable to the timeliness of the claim, including limitations and laches.

B. A party may initiate proceedings by serving a written request to initiate proceedings on AAA, JAMS, or CPR and tendering the appropriate administrative fee.

C. AAA, JAMS, or CPR shall serve Copies of the request on all other parties to the Dispute. The request shall describe the nature of the Dispute, the amount involved, if any, the remedy sought, and the proceeding locale requested

D. Proceedings may also be initiated by an Employee or Applicant by serving a written request to initiate proceedings on the Company's Dispute Resolution Plan Administrator. In such a case, the Company shall promptly forward any properly served request it has received to AAA, JAMS, or CPR.

E. Parties against whom a claim is asserted shall file an answering statement within 21 days of receiving notice of intent to arbitrate or a specification of claims, which shall include any counterclaims and any request that the arbitrator (if any) prepare a statement of reasons for the award.

## 4. Administrative Conference

AAA, JAMS, or CPR shall convene an administrative conference as soon as possible after receipt of the answering statement or after expiration of the time for filing an answering statement if one has not been filed. The conference may be held in person or by telephone. At the conference, AAA, JAMS, or CPR will determine whether the Parties are in agreement on a method to resolve the Dispute. If the Parties are in agreement, AAA, JAMS, or CPR will implement the procedure in accordance with their rules upon payment of any applicable fee. If the Parties cannot agree, or if the Parties have previously attempted and failed to resolve the Dispute by mediation or another nonbinding mechanism, the Dispute shall be arbitrated under these Rules

## 5. Appointment of Arbitrator

Immediately after payment of the arbitration fee, AAA, JAMS, or CPR shall simultaneously send each party an identical list of names of persons chosen from a panel of qualified arbitrators which AAA, JAMS, or CPR shall select and maintain. Each Party to the Dispute shall have fourteen (14) days from the transmittal date to strike any names objected to, number the remaining names in order of preference, and return the list to AAA, JAMS, or CPR. If a party does not return the list within the time specified, all persons therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the order of mutual preference, AAA, JAMS, or CPR shall invite the acceptance of the arbitrator to serve Any party shall have the right to strike one list of arbitrators in its entirety. When a party exercises this right, AAA, JAMS, or CPR shall issue a new list of arbitrators consistent with the above procedures.

6. Qualifications of the Arbitrator

No person shall serve as an arbitrator in any matter in which that person has any financial or personal interest. Prior to accepting appointment, the prospective arbitrator shall disclose any circumstance likely to prevent a prompt hearing or create a presumption of bias. Upon receipt of such information from the arbitrator or any other source, AAA, JAMS, or CPR will either replace that person or communicate the information to the Parties for comment. Thereafter, AAA, JAMS, or CPR may disqualify that person, and its decision shall be conclusive.

7. Vacancies

If a vacancy occurs for any reason or if an appointed arbitrator is unable to serve promptly, the appointment procedure in Section 5 shall apply to the selection of a substitute arbitrator.

8. Date, Time and Place of Hearings

A. The arbitrator shall set the date, time and place of any proceeding.

B. Notice of any hearing shall be given at least ten (10) days in advance, unless the arbitrator determines or the Parties agree that a shorter time is necessary.

C. The arbitrator shall make every effort, without unduly incurring expense, to accommodate the Employee or Applicant in the selection of a proceeding location.

9. Conferences

At the request of AAA, JAMS, or CPR or of a Party or on the initiative of the arbitrator, the arbitrator or AAA, JAMS, or CPR may notice and hold conferences for the discussion and determination of any matter which will expedite the proceeding, including:

A. venue,

B. clarification of issues,

C. determination of preliminary issues, including summary determination of dispositive legal issues,

D. discovery,

E. the time and location of proceedings or conferences,

F. interim legal or equitable relief authorized by applicable law,

G. pre- or post-hearing memoranda,

H. stipulations; and/or

I. any other matter of substance or procedure.

10. Mode of Hearings and Conferences

In the discretion of the arbitrator or by agreement of the Parties, conferences and hearings may be conducted by telephone or by written submission, as well as in person.

11. Pre-hearing Discovery

A. On any schedule determined by the arbitrator, each Party shall submit in advance, the names and addresses of the witnesses it intends to produce and any documents it intends to present.

B. The arbitrator shall have discretion to determine the form, amount and frequency of discovery by the Parties.

C. Discovery may take any form permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any restrictions imposed by the arbitrator.

12. Representation

Any party may be represented by counsel or by any other authorized representative.

13. Attendance at Hearings

The arbitrator shall maintain the privacy of the proceedings to the extent permitted by law. Any person having a direct interest in the matter is entitled to attend the proceedings.

The arbitrator shall otherwise have the power to exclude any witness, other than a Party or other essential person, during the testimony of any other

witness. The arbitrator shall determine whether any other person may attend the proceeding. Upon the request of any Party, the arbitrator shall exclude any witness during the testimony of any other witness.

## 14. Postponement

A   The arbitrator, for good cause shown by a Party, or on agreement of the Parties, may postpone any proceeding or conference.

B   The pendency of court proceedings related to the same matter is not good cause for postponement.

## 15. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if required by law or requested by any Party, shall do so.

## 16. Record of Proceedings

There shall be no stenographic, audio or video record of the proceedings unless either requested by one of the Parties or specified by the arbitrator. The Party requesting the record shall bear the entire cost of producing the same. Copies of the record shall be furnished to all other Parties upon request and upon payment of the cost of reproduction.

## 17. Procedure

The proceedings shall be conducted by the arbitrator in whatever order and manner will most expeditiously permit full presentation of the evidence and arguments of the Parties.

## 18. Arbitration in the Absence of a Party

The arbitrator may proceed in the absence of Parties or representatives who, after due notice, fail to be present or fail to obtain a postponement. An award shall not be made solely on the default of a Party. The arbitrator shall require any Party who is present to submit such evidence as the arbitrator may require for the making of an award.

## 19. Evidence

A   The arbitrator shall be the sole judge of the relevancy, materiality, and admissibility of evidence offered. Conformity to legal rules of evidence shall not be necessary.

B   The arbitrator may subpoena witnesses or documents at the request of a Party or on the arbitrator's own initiative.

C   The arbitrator may consider the evidence of witnesses by affidavit or declaration, but shall give it only such weight as the arbitrator deems appropriate after consideration of any objection made to its admission.

## 20. Post-Hearing Submissions

All documentary evidence to be considered by the arbitrator shall be filed at the hearing unless the arbitrator finds good cause to permit a post-hearing submission. All Parties shall be afforded an opportunity to examine and comment on any post-hearing evidence. The arbitrator shall permit the filing of post-hearing briefs at the request of a Party and shall determine the procedure and timing of such filings.

## 21. Closing and Reopening of Proceedings

A   When the arbitrator is satisfied that the record is complete, including the submission of any post-hearing briefs or documents permitted by the arbitrator, the arbitrator shall declare the proceeding closed.

B   The proceeding may be reopened on the arbitrator's initiative or upon application of a Party at any time before the award is made.

## 22. Waiver of Procedures

Any Party who fails to object in writing, after knowledge that any provision or requirements of these procedures and Rules have not been complied with, shall be deemed to have waived the right to object.

## 23. Service of Notices and Papers

Any papers, notices, or process necessary or proper for the initiation or continuation of any proceeding

under these Rules (including the award of the arbitrator, any court action in connection therewith, or the entry of judgment on an award made under these procedures) may be served on a Party by mail addressed to the Party or his or her representative at the last known address or by personal service. AAA, JAMS, CPR, the Parties, and the arbitrator may also use facsimile transmission, telex, telegram, or other written forms of electronic communication to give any notices required by these Rules.

24. **Communications with the AAA, JAMS, CPR and the Company**

A. Any Party may notice, serve or communicate with AAA by contacting:

American Arbitration Association,
Employment Department
1750 Galleria II Tower
13455 Noel Road
Dallas, Texas 75240
(800) 426-8792
Fax: (972) 490-9008

B. Any Party may notice, serve or communicate with JAMS by contacting:

JAMS
45 Broadway
28th Floor
New York, NY 10006
(212) 751-2700 or (800) 352-5267
Fax: (212) 751-4099

C. Any Party may notice, serve or communicate with CPR by contacting:

Center for Public Resources
366 Madison Avenue, 14th Floor
New York, NY 10017-3122
(212) 949-6490
Fax: (212) 949-8859

D. Any Party may notice, serve or communicate with the Company by contacting:

Dispute Resolution Program Administrator
Dresser, Inc.
15455 N. Dallas Parkway, Suite 1100
Addison, TX 75001
(972) 361-9800

25. **Communication with the Arbitrator**

There shall be no communication between the Parties and the arbitrator other than at any oral hearings or conferences. Any other oral or written communications from the Parties to the arbitrator shall be directed to the AAA, JAMS, or CPR (and copied to the Parties) for transmission to the arbitrator, unless the Parties and the arbitrator agree otherwise.

26. **Time of Award**

The award shall be promptly made by the arbitrator, unless otherwise agreed by the Parties or specified by applicable law, no later than thirty (30) days from the date of the closing of the proceeding or, if applicable, the closing of a reopened proceeding.

27. **Form of Award**

The award shall be in writing and shall be signed by the arbitrator. The arbitrator shall write a statement of reasons for the award if requested to do so in the request to initiate proceedings or in the answering statement. The award shall be executed in any manner required by applicable law.

28. **Modification of Award**

On order of a court of competent jurisdiction, or on agreement of the Parties, the arbitrator shall modify any award. The arbitrator may modify an award on the motion of a Party if the arbitrator finds that the award, as rendered, is ambiguous or defective in form, or if the award requires an illegal or impossible act. These are the only circumstances under which an arbitrator shall have jurisdiction to withdraw or modify an award.

29. Settlement

If the parties settle their Dispute during the course of the arbitration, the arbitrator may set out the terms of the settlement in a consent award.

30. Scope of Arbitrator's Authority

The arbitrator's authority shall be limited to the resolution of legal Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law including that related to the allocation of the burden of proof as well as substantive law. The arbitrator shall not have the authority either to abridge or enlarge substantive rights available under applicable law. The arbitrator may also grant emergency or temporary relief that is or would be authorized by applicable law. The arbitrator shall be bound by and shall comply with the provisions of the Plan and Rules.

31. Judicial Proceedings and Exclusion of Liability

A. Neither AAA, JAMS, CPR, nor any arbitrator is a necessary party in any judicial proceedings relating to proceedings under these Rules.

B. Neither AAA, JAMS, CPR, nor any arbitrator shall be liable to any Party for any act or omission in connection with any proceedings within the scope of these Rules.

C. Any court with jurisdiction over the Parties may compel a Party to proceed under these Rules at any place and may enforce any award made.

D. Parties to these Rules shall be deemed to have consented that judgment upon the award of the arbitrator may be entered and enforced in any federal or state court having jurisdiction of the Parties.

E. Initiation of, participation in, or removal of a legal proceeding shall not constitute waiver of the right to proceed under these Rules.

F. Any court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings under these Rules.

16

32. Fees and Expenses

A. The expenses of witnesses shall be borne by the Party producing such witnesses, except as otherwise provided by law or in the award of the arbitrator.

B. All attorney's fees shall be borne by the Party incurring them except as otherwise provided by law, by the Plan, or in the award of the arbitrator.

C. Discovery costs (e.g., court reporter fees for original transcripts) shall be borne by the Party initiating the discovery. The cost of copies of deposition transcripts or other discovery shall be borne by the Party ordering the copy.

D. The fees and expenses of experts, consultants and others retained or consulted by a Party shall be borne by the Party utilizing those services.

E. The Employee or Applicant shall pay a $50 fee if he or she initiates arbitration or mediation. Otherwise, Employee/Applicant Parties shall not be responsible for payment of fees and expenses of proceedings under these Rules including required travel of an arbitrator or a mediator, expenses of an arbitrator, mediator, AAA, JAMS, or CPR, and the cost of any proof produced at the discretion of an arbitrator.

F. If the demand for mediation or arbitration is initiated by the Company, such fees will be paid by the Company.

G. Except as otherwise provided by law or in the award of the arbitrator, all other expenses, fees and costs of proceedings under these Rules shall be borne equally by the Parties who are not Employees/Applicants.

33. Interpretation and Application of These Rules

The arbitrator shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties. All other rules shall be interpreted and applied by the AAA, JAMS, or CPR.

17

34. Applicable Law

    A   Proceedings under these Rules and any judicial review of awards shall be governed by the Act

    B   Except where otherwise expressly provided in these Rules, the substantive law applied shall be state or federal substantive law which would be applied by a United States District Court sitting at the place of the proceeding

35. Mediation

At any time before the proceeding is closed, the Parties may agree to mediate their dispute by notifying AAA, JAMS, or CPR. AAA, JAMS, or CPR shall determine what procedures apply to any such mediation.

# Appendix

---

## The Ombudsman Association

---

### Code of Ethics

The ombudsman, as a designated neutral, has the responsibility of maintaining strict confidentiality concerning matters that are brought to his/her attention unless given permission to do otherwise. The only exceptions, at the sole discretion of the ombudsman, are where there appears to be imminent threat of serious harm.

The ombudsman must take all reasonable steps to protect any records and files pertaining to confidential discussions from inspection by all other persons, including management.

The ombudsman should not testify in any formal judicial or administrative hearing about concerns brought to his/her attention.

When making recommendations, the ombudsman has the responsibility to suggest actions or policies that will be equitable to all parties.

©The Ombudsman Association

Reprinted by permission of The Ombudsman Association of American, 1997

## The Ombudsman Association
# STANDARDS OF PRACTICE
© 1995

**The mission of the organizational ombudsman is to provide a confidential, neutral and informal process which facilitates fair and equitable resolutions to concerns that arise in the organization. In performing this mission, the ombudsman serves as an information and communication resource, upward feedback channel, advisor, dispute resolution expert and change agent.**

**While serving in this role:**

**1.** We adhere to The Ombudsman Association Code of Ethics.

**2.** We base our practice on confidentiality.

**2.1** An ombudsman should not use the names of individuals or mention their employers without express permission.

**2.2** During the problem-solving process an ombudsman may make known information as long as the identity of the individual contacting the office is not compromised.

**2.3** Any data that we prepare should be scrutinized carefully to safeguard the identity of each individual whose concerns are represented.

**2.4** Publicity about our office conveys the confidential nature of our work.

**3.** We assert that there is a privilege with respect to communications with the ombudsman and we resist testifying in any formal process inside or outside the organization.

**3.1** Communications between an ombudsman and others (made while the ombudsman is serving in that capacity) are considered privileged. Others cannot waive this privilege.

**3.2** We do not serve in any additional function in the organization which would undermine the privileged nature of our work (such as compliance officer, arbitrator, etc.)

**3.3** An ombudsman keeps no case records on behalf of the organization. If an ombudsman finds case notes necessary to manage the work, the ombudsman should establish and follow a consistent and standard practice for the destruction of any such written notes.

**3.4** When necessary, the ombudsman's office will seek judicial protection for staff and records of the office. It may be necessary to seek representation by separate legal counsel to protect the privilege of the office.

**4.** We exercise discretion whether to act upon a concern of an individual contacting the office. An ombudsman may initiate action on a problem he or she perceives directly.

**5.** We are designated neutrals and remain independent of ordinary line and staff structures. We serve no additional role (within an organization where we serve as ombudsman) which would compromise this neutrality.

**5.1** An ombudsman strives for objectivity and impartiality.

**5.2** The ombudsman has a responsibility to consider the concerns of all parties known to be involved in a dispute.

**5.3** We do not serve as advocates for any person in a dispute within an organization; however, we do advocate for fair processes and their fair administration.

**5.4** We help develop a range of responsible options to resolve problems and facilitate discussion to identify the best options. When possible, we help people develop new ways to solve problems themselves.

5.5   An ombudsman should exercise discretion before entering into any additional affiliations, roles or actions that may impact the neutrality of the function within the organization.

5.6   We do not make binding decisions, mandate policies or adjudicate issues for the organization.

6.    We remain an informal and off-the-record resource. Formal investigations - for the purpose of adjudication - should be done by others. In the event that an ombudsman accepts a request to conduct a formal investigation, a memo should be written to file noting this action as an exception to the ombudsman role. Such investigations should not be considered privileged.

6.1   We do not act as agent for the organization and we do not accept notice on behalf of the organization. We do always refer individuals to the appropriate place where formal notice can be made.

6.2   Individuals should not be required to meet with an ombudsman. All interactions with the ombudsman should be voluntary.

7.    We foster communication about the philosophy and function of the ombudsman's office with the people we serve.

8.    We provide feedback on trends, issues, policies and practices without breaching confidentiality or anonymity. We identify new problems and we provide support for responsible systems change.

9.    We keep professionally current and competent by pursuing continuing education and training relevant to the ombudsman profession.

10.   We will endeavor to be worthy of the trust placed in us.

Reprinted by permission of The Ombudsman Association of American, 1997

22

DRESSER

Dresser, Inc.
15455 N. Dallas Parkway
Suite 1100
Addison, TX  75001
972-361-9800

EXHIBIT 4



Options for
**Resolution**

**DRESSER** Dispute Resolution Program



## Table of Contents

What's in the DRP for All of Us                                    1
Why We Have the DRP                                                2
How It Works                                                       3
    Open Door
    Internal Conference
    Mediation
    Arbitration
    Program Features
The DRP at a Glance                                                4
Who is Covered                                                     5
The Open Door Option                                               6
The Internal Conference Option                                     8
The Mediation Option                                               9
The Arbitration Option                                            10
Who Are the Mediators and Arbitrators                             12
    American Arbitration Association (AAA)
    CPR Institute for Dispute Resolution (CPR)
    Judicial Arbitration and Mediation Services (JAMS)
Program Features in Detail                                        13
    DRP Helpline
    Dresser Ombudsman
    Employee Legal Assistance Plan
    Ongoing Skills Training
Questions and Answers                                             14

**Call the DRP Helpline to receive free, expert and confidential advice. 1-866-560-4951.**

This booklet is intended as a summary of the major features of the Dispute Resolution Program.The formal Dispute Resolution Program Plan and Rules contains the controlling terms and conditions. In the event of any variation between this booklet and the Plan and Rules, the Plan and Rules will control.

This brochure revision date is June 2004.

# What's in the DRP for All of Us

I f you have a work-related problem you cannot resolve on your own, or if you are responsible for handling or responding to employee concerns and would like assistance, we have a program that will help. It's called the Dispute Resolution Program (DRP). Its purpose is to give you an improved process and flexible options for airing and settling almost every kind of workplace conflict — from minor, everyday misunderstandings, to violations of legally protected rights. The Program offers many advantages. It allows you and the Company to resolve differences, in ways that are:

- **Constructive** — protecting careers, relationships and reputations;
- **Swift** — taking days, weeks or months, instead of years;
- **Confidential** — respecting your privacy and the privacy of others;
- **Simple** — resolving problems at the lowest possible level of involvement;
- **Realistic** — recognizing that different people and different problems require different solutions;
- **Inexpensive** — avoiding or holding down any attorneys' fees or legal expenses; and
- **Equitable** — providing many options for resolving problems objectively, using an independent neutral third party — a trained mediator or arbitrator — if one is needed.

When we deal with conflicts appropriately, we can increase understanding among everyone involved, reduce workplace tension, open up communication and enhance teamwork. Our goal is to resolve disagreements in a timely manner when they first occur, or as soon as possible.

We have used this Program since 1999 and it has proven to be a useful and valuable tool for employees and the Company. We believe the benefits of our Dispute Resolution Program are outstanding and we believe you will agree.

**Please read this brochure carefully and keep it as a ready reference.**

1

# Why We Have the DRP



### A Better Way to Handle Disputes

We, and our prior owner the Halliburton Company, held focus groups and interviews with employees to learn more about their concerns regarding our methods of resolving workplace disputes. Trust in the system, protection against retaliation, protection of legal rights, and personal control over ways to resolve disputes were major issues for all. We listened to these concerns and designed the DRP to improve the process. We also established program features to make the resolution options cost-effective and timely for employees and the Company.

### One Problem-Solving Program

Employees also told us they want a sense of stability at work in light of all the upheavals and transitions that result from continuous change. One way to provide this stability is to continue the Halliburton process of dispute resolution and thus, have a consistent, easy-to-use problem-solving program that applies to all the Business Units in the Dresser system.

### "No Retaliation"

It is good business to have an environment where people can resolve problems; that is the only way dispute resolution can be truly effective. Therefore, if you use the DRP, retaliation is not allowed. You have every right to be heard and to expect that your dispute will be resolved. To help ensure this, some options within the DRP are strictly confidential. Also, senior management fully supports the policy of "No Retaliation." This policy protects your job, your relationships and your reputation.

### Protection of Your Legal Rights

The program provides protection of your legal rights — such as prohibitions against discrimination and unlawful harassment — and protection of all other rights covered by federal or state law. Because we take complaints about violations of your rights very seriously we designed the DRP to allow such complaints to be resolved more quickly and at less expense than if you were to take them through the judicial system.

2

# How It Works

The DRP has four options that range from internal, quick ways to resolve issues, to external methods that are more formal and take more time. You can use these options in any order, depending on the nature of your dispute. Brief descriptions of the options are provided here, and more detailed explanations begin on page 6.

**The Open Door Option** is the option we encourage employees to use first, because it is fast and closest to the problem. It provides immediate access to your chain of command — beginning with your supervisor and proceeding up through the organization, if necessary. You may also call the DRP Helpline for advice from Dresser's Ombudsman, or contact your Business Unit Human Resources Department or Corporate Employee Relations Director for advice, or to request an investigation.

**The Internal Conference Option** provides a setting for you to discuss your concerns with the Dresser Ombudsman and a Company representative. You might resolve the issue at this level, or you may choose to go back to the Open Door. You and the other employee(s) involved might decide you want a neutral person to help you find a mutually agreeable solution through an internal mediation process inside the Company. The Ombudsman can arrange the internal mediation for you. Many people prefer internal mediation to a formal outside process. However, you may also choose to proceed to Mediation or Arbitration if your dispute concerns your legally protected rights.

**The Mediation Option** gives you the opportunity to resolve your problem with assistance from a trained, independent mediator from outside the Company. The mediator makes suggestions for resolution, but does not decide how you will resolve the dispute — that is up to you and the Company. The DRP uses three organizations that provide professional mediators (see page 12). For some employees, just presenting their case to someone outside the Company is all that is needed to break a stalemate. We offer internal and external mediation so that you and the Company have a choice of methods and resources.

**The Arbitration Option** is a process in which you and the Company present your dispute to a neutral third party, an arbitrator, for a final and binding decision. If your dispute concerns a legally protected right, you may go directly to arbitration. The arbitrator makes a decision after both sides present their arguments. The arbitrator can award any remedy you might receive in a court of law. The same three organizations that provide the services of a mediator also provide the services of an arbitrator. Very few cases, less than 2%, require arbitration to resolve the dispute.

**Program Features**
In addition to the above four options to help resolve disputes, the program includes a DRP Helpline, an Ombudsman, an Employee Legal Assistance Plan, and Ongoing Skills Training. Specifics about each of these features are on page 13.

3

# Dispute Resolution Program at a Glance

**Internal Options**
*Any Workplace Problem*

**External Options**
*Problems Involving Legally Protected Rights*

## Mediation

You may present your dispute to neutral third party for help in resolving your dispute

## 1

### Open Door

You can go directly to any of these resources:
- Supervisors
- Managers
- Human Resources
- Employee Relations
- Other Internal Resources

## 2

### Internal Conference

The DRP can help you access any of these resources:
- Open Door Resources
- Informal Resolution
- Internal Mediation
- External Resolution Options
- Customized Procedures

You may choose external process if the dispute is based on legally protected rights

## AAA,CPR, or JAMS

## Arbitration

You may present your dispute to neutral third party for a final, binding decision.

### Ombudsman via DRP Helpline
### 1-866-560-4951

4

# Who Is Covered

Most of the people working for Dresser Business Units are covered by the Dispute Resolution Program. The only employees not covered are:

- Those working outside the United States and not governed by U S laws; and
- Those who are covered by a collective bargaining agreement and not specifically covered by the Dispute Resolution Program.

Unless the specific exceptions noted above apply to you, you are automatically covered (no signature is required) if you:

- Accept employment;
- Continue your current employment after the effective date of the DRP's adoption by your Business Unit; or
- Have been covered under a previous version of the DRP, as communicated to you in a mail-out by the Halliburton Company or Dresser.

*Dresser has adopted this four-option program as the exclusive means of resolving workplace disputes for legally protected rights. In adopting the program, Dresser agrees also to use the program to resolve all workplace disputes. Similarly, an employee who accepts or continues employment at Dresser, by accepting compensation for employment, agrees to resolve all legal claims against Dresser or any other Dresser entity, employee, client, customer, or joint employer through this process rather than through the court system. If an employee files a lawsuit against Dresser or any of the parties listed above, Dresser will ask the court to dismiss the lawsuit and refer it to the Dispute Resolution Program. This provision applies to any workplace dispute, regardless of when it arises, including disputes that arise after an employee leaves Dresser.*

5



# The Open Door Option

Working out problems when they are small prevents communications from breaking down. When people stop talking to each other, they focus on their anger and what they imagine to be true, instead of on the facts. You and the Company stand the best chance of resolving problems by tackling them together through the Open Door Option ... before they become crises

### What is the Open Door Option?

The Open Door Option guarantees that all doors are open to you within the Company. It offers you a variety of ways in which you can solve your problem, including the DRP Helpline and the Director of Employee Relations. The Open Door Option is a voluntary process that allows you to talk to your immediate supervisor or to a higher level of management — without fear of retaliation. Although you are encouraged to solve your problem at the lowest possible level, you may take it as far up the chain of command as needed.

### Key Advantages of the Open Door Option

- Management is committed to it and expected to honor it.
- It makes early on-site problem solving more likely.
- It encourages you to give feedback to management.
- You get your questions answered and learn about your options.
- You have instant support through the DRP Helpline and the program's Ombudsman.
- It's free.
- It's flexible.
- You can contact an Ombudsman in confidence.
- Retaliation is forbidden.
- It helps you help yourself.

### The Open Door Option is Easy to Use

This is one of the options used most often. It is encouraged because it is so easy to use, it promotes faster resolution than more formal options, and it reduces the risk of damaged relationships. Most businesses prefer to resolve disputes this way — at the lowest possible level. We have just given it a formal name. Many of the Business Units that are part of Dresser, Inc. have used this kind of process before and want to continue solving problems this way

6

# The Open Door Option

You are free to raise a concern with any level of management. That's the Open Door tradition. Supervisors and managers understand:

- There are four options of the Dispute Resolution Program;
- It is part of their job to help you solve workplace problems through the Open Door Option; and
- Dresser forbids any retaliation against you for trying to solve a workplace dispute within the terms of the Dispute Resolution Program.

**Here is where to take your concerns:**

**Immediate Supervisor**
Dresser encourages attempting to resolve any problems at work with your immediate supervisor whenever possible. Because this person is close to your situation, he or she may already be aware of the problem, be in a position to offer a new perspective, or provide new facts that may be helpful to you.

**Higher Level of Supervision**
Unfortunately, sometimes your supervisor is part of the problem. If you are unsatisfied with your immediate supervisor's response or you need to talk to someone other than your supervisor, you may take your problem to the next higher level of supervision, or any level of supervision as needed to solve the problem.

**Business Unit Human Resources or Director of Employee Relations**
At any time, you may also choose to contact your Human Resources Department or the Corporate Employee Relations Director for advice or assistance, or to request an investigation. These departments have many years of experience in helping employees deal with a variety of workplace problems.

You should be able to resolve most routine workplace problems through the Open Door Option. If this does not produce anticipated results, you may speak with Dresser's Ombudsman through an Internal Conference to see if you can agree on what to do next.

7

# The Internal Conference Option

**What Is an Internal Conference?**

An Internal Conference is a meeting, conducted in person or by phone, in which you and the other employee(s) involved speak with the Dresser Ombudsman from the Dispute Resolution Program and choose a process for resolving your dispute. The goal of the Internal Conference is to help everyone involved agree on a way to settle the dispute.

**During the Internal Conference you may decide to:**

- Loop back to the open door resources. At the Internal Conference, you may agree that the best way to resolve your differences is by going back through your chain of command, Human Resources or Employee Relations.

- Seek an informal resolution. The Ombudsman can provide informal, confidential assistance, or help you help yourself.

- Try internal mediation. You and the Company may agree to try an in-house dispute resolution process, such as internal mediation. The mediator in this case would be a trained individual within the Program who is experienced in resolving employee disputes. This impartial expert will listen objectively to the people involved, and try to help them work out their dispute themselves.

- Use an external process (mediation or arbitration). In some cases involving legally protected rights, you may want to proceed directly to an external resolution process, such as mediation or arbitration, through the American Arbitration Association (AAA), the CPR Institue for Dispute Resolution (CPR), or the Judicial Arbitration and Mediation Services (JAMS). See page 12 for more information about these organizations. In mediation, you'll have the opportunity to discuss your dispute with a mediator and work out a solution yourself. In arbitration, you present your dispute to an arbitrator, who will then hand down a final decision.



**Key Advantages of the Internal Conference**
- You have the opportunity to review every option in detail.
- You can compare the various options and consider how each may work for you.
- All involved are given a choice in how they want to resolve the conflict.

- Develop customized procedures. If necessary, the Ombudsman can even help you develop customized procedures for resolving your differences.

8



# The Mediation Option

If your dispute is based on legally protected rights, you may believe an external mediation process is necessary for resolution. For many people, just presenting their case to someone outside the Company who is not involved in the problem is all that is needed to break a stalemate. All external dispute resolution processes in this program use neutral parties provided through the American Arbitration Association (AAA), the CPR Institue for Dispute Resolution (CPR), or Judicial Arbitration and Mediation Services (JAMS).

## What Is Mediation?

Mediation is often the most straightforward and cost-effective formal method of examining and resolving disputes. It is a meeting during which a neutral third party, called a mediator, helps you and the Company come to an agreement based on the needs and interests of all concerned. Mediation helps primarily by opening up communications and by coming up with options. In mediation, there is no resolution unless all of the parties agree upon a solution. The mediator can make suggestions, but you and the other party are responsible for actually resolving your dispute. In some cases involving legally protected rights, both parties may agree to bypass this option and move directly from the Internal Conference to the Arbitration Option for a final decision.

**Key Advantages of Mediation**
- Provides the opportunity for both sides to share their views.
- Allows both sides to have a third party perspective.
- Helps manage feelings of hostility.
- Helps separate emotions from facts.
- Promotes discussion of creative solutions.
- Helps people work things out themselves.
- Gives everyone a say in picking the mediator.
- Offers an opportunity for win-win solutions—a solution that is good for both you and the Company.

## Requesting Mediation

To request mediation, simply contact AAA, CPR, or JAMS. You will be charged a processing fee of $50. The contact information is on page 12.

## How Successful Is Mediation?

While external mediation is used far less frequently than the Open Door or Internal Conference, it is highly successful when it is used. Over 80% of the cases that go to external mediation are resolved at this stage.

## Typical Mediation Steps

1. When you or the Company request mediation, AAA, CPR, or JAMS will assign a professional mediator who is located close to your home.
2. The first meeting or phone conference is arranged after the mediator is selected.
3. You and a Company representative will meet with the mediator, who will guide your discussion and help you work out your differences.
4. The mediator may meet separately and confidentially with you and with the Company representative to develop a better understanding of the problem and help you find resolution.

Mediation is usually successful in helping you reach a settlement. If it is not successful, you or the Company may wish to take your dispute to arbitration for a final and binding decision.

9



# The Arbitration Option

If the dispute involves a legally protected right — such as protection against age, race or sex discrimination, or protection against sexual harassment — and has not been resolved in the Open Door, Internal Conference or Mediation Options, you or the Company may request arbitration. While you do not have to proceed through each of the options in a specific order, the Program is designed with multiple options to maximize the possibility of resolution prior to the Arbitration Option. In fact, arbitration is the least-used option in the program.

All external dispute resolution processes in this program use neutral parties provided through the American Arbitration Association (AAA), the CPR Institue for Dispute Resolution (CPR), or Judicial Arbitration and Mediation Services (JAMS). Dresser has found that AAA provides the greatest level of assistance in managing the arbitration process, but provides access to the other organizations as optional alternatives.

### What Is Arbitration?
Arbitration is a process in which a dispute is presented to a neutral third party, an arbitrator, for a final and binding decision. The arbitrator makes this decision after both sides present their evidence and arguments at the arbitration hearing. There is no jury. If the decision is in your favor, you can be awarded anything you might seek through a court of law. The neutral party runs the proceedings, which are held privately. Though arbitration is much less formal than a court trial, it is an orderly proceeding, governed by the Federal Rules of Civil Procedure and legal standards of conduct.

### Requesting Arbitration
To request arbitration, simply contact Dresser's Ombudsman, who will provide you the information for AAA, CPR, or JAMS. Descriptions of each can be found on page 12. If you have already participated in mediation and paid a processing fee of $50, you will not have to pay any additional costs to initiate arbitration. If you have not previously participated in mediation, a $50 fee will be required.

You may move to the Arbitration Option directly from the Internal Conference — as long as your dispute involves a legally protected right.

10

# The Arbitration Option

**The Role of Lawyers**

The Company has access to legal advice through its law department and outside lawyers. You may consult with a lawyer or any other advisor of your choice. Upon approval of the Plan Administrator, the Company will pay part of your legal fees through the Employee Legal Assistance Plan, up to a maximum of $2,500. See page 13 for more information or call the Dresser Ombudsman for details of this program.

You are not required, however, to hire a lawyer to participate in arbitration. If you choose not to bring a lawyer to arbitration, in most cases the Company will also choose to participate without a lawyer.

**Typical Arbitration Steps**



1. Either you or the Company files a demand for arbitration with AAA, CPR, or JAMS.

2. Any other parties involved are notified.

3. AAA, CPR, or JAMS offers a list of qualified arbitrator candidates.

4. Both you and the Company number the list of candidates in order of preference.

5. An arbitrator is selected, based on mutual preferences.

6. AAA, CPR, or JAMS arranges a hearing date at a convenient location.

7. At the hearing, testimony is given and documents are exchanged.

8. Witnesses are questioned and cross-examined.

9. The arbitrator issues a final and binding decision.

10. Copies of this decision are sent to both you and the Company.

11

# Who Are the Mediators and Arbitrators?

Sometimes, the best way to solve a problem is to seek outside help. If that is best for your dispute, you can use the services of a trained mediator or arbitrator. These people are highly skilled professional third parties who are neutral and whose services are confidential. The DRP uses three different professional organizations that provide mediators and arbitrators.

You must pay a $50 processing fee to use an external resolution process. The Company pays all additional fees of the mediation or arbitration agency over the $50 fee. Once you have made your request and paid your fee, the Company will participate in the process. Keep in mind that if the process uses more than one neutral party, there may be additional cost to you. If you participate in mediation and pay the $50 fee, you will not have to pay any additional costs to initiate arbitration. Of course, you are responsible for expenses you elect to incur during the mediation or arbitration process, such as attorney fees exceeding the maximum under the Employee Legal Assistance Plan, discovery costs, etc.

**Following are the three organizations the DRP uses:**

**The American Arbitration Association (AAA)** is a nonprofit organization that offers a wide range of dispute resolution services to private individuals, businesses, associations, and all levels of government. It handles approximately 60,000 cases each year and has access to over 50,000 neutral experts who can hear and decide cases.

**The CPR Institue for Dispute Resolution (CPR)** is a leading nonprofit alliance of global corporations, law firms, legal academics and selected public institutions, which focuses on new uses of alternative dispute resolution for business and public disputes. CPR's mediation model is widely used by Fortune 500 companies.

**Judicial Arbitration and Mediation Services (JAMS)** is an independent company with offices across the country which specializes in helping individuals and companies resolve all types of work-related disputes and claims.

12

# Program Features in Detail

**DRP Helpline**

You may call the toll free DRP Helpline at 1-866-560-4951 to receive free, expert and confidential assistance. The Dresser Ombudsman can explain how to solve problems informally within the Company or formally with the external options of mediation or arbitration. You do not need to give your name in order to get help. You may remain anonymous and just ask questions. Or, you may wish to give your name, discuss all the details of your situation and be coached through the Open Door process. If and how you use the DRP Helpline is entirely up to you.

**Dresser Ombudsman**

Ombudsmen are trained professionals, skilled in dealing with complaints, who help guide you through the DRP process. They operate under The Code of Ethics and Standards of Practice of The Ombudsman Association, designed to ensure the independence, confidentiality and neutrality of the Ombudsman. Dresser's Ombudsman can help you by answering your questions, acting as a go-between, reviewing your options, getting the facts, helping you "open doors," referring you to other resources and helping you help yourself.

**Employee Legal Assistance Plan (ELAP)**

This Plan may help cover the cost of consulting with an attorney of your choice to obtain valuable information about your legal rights. You may apply to the Dresser Ombudsman for this benefit if your dispute involves a legally protected right. The maximum benefit per matter is $2,500 and is based on the cumulative fact pattern that gives rise to the dispute. In other words, if a work situation gives rise to a claim or several related claims, your ELAP benefit applies to those related claims. You will be required to pay a deductible of $25, while Dresser pays the remainder.

> *For example:*
> You may choose any licensed attorney you want. If the legal consultation costs $500, you would pay a deductible of $25 and then the Company would pay $475. The Plan Administrator must approve all payments from the Employee Legal Assistance Plan.

**Ongoing Skills Training**

We provide ongoing skills training for supervisors and managers, to improve our ability as an organization to resolve disputes at the lowest possible level.

13



# Questions and Answers

**Why does the Company have the Dispute Resolution Program (DRP)?**
The Company uses the DRP because it provides a cost-effective and timely process for maintaining employment relationships. This process is good for employees and the Company. The more traditional approach of a lawsuit is expensive, time consuming, adversarial and destructive. Typically, lawsuits take years to run their course, and they often create unwanted publicity that embarrasses everyone. The DRP saves everyone time and money, and is more likely to respect everyone's privacy.

**Because the Company pays the fees of the mediators and arbitrators, how independent and impartial can these third parties be?**
Mediators and arbitrators are typically retired judges, human resources or employee relations professionals, attorneys, or professors of labor law or a similar discipline. They take pride in their neutrality and are trained to be impartial. Also, you participate in choosing your mediator and arbitrator.

**Who uses the DRP and for what kinds of problems?**
Laborers, administrative assistants, clerical workers, professionals, technicians, managers and senior executives alike may use the DRP. Assistance is available to resolve concerns about termination, conflicts with a co-worker, retaliation for raising a concern or complaint, disciplinary or supervisory issues, safety concerns, discrimination, racial or sexual harassment, unfair treatment and morale on the job. The Program is designed for use by employees at every level of the Company, for almost any workplace-related conflict.

**Does having this Program mean I cannot sue Dresser?**
If you are covered by the Program and you file a lawsuit, Dresser attorneys will go before the court, tell the court of the Dresser Dispute Resolution Program, and ask that the case be dismissed and sent back to the Program.

**What if my dispute concerns a benefit plan, or I'm injured on the job or laid off by Dresser? Can I use the Program then?**
First, you can use the DRP for concerns about benefit plans. However, there are methods in place within each benefit plan to address your concerns, and you should use those methods prior to contacting the DRP. Second, the Workers' Compensation Claims Department handles claims for Workers' Compensation. However, if you feel you've been unfairly treated because you filed a Workers' Compensation claim, you should contact the DRP. Third, if you feel you were laid off without a good reason, you should contact the DRP.

**What if my supervisor makes work difficult for me after I bring my dispute to the Program?**
The Company forbids retaliation for using the DRP. If you feel someone is retaliating against you for using any of the options of the Program, contact a higher level in your chain of command, or Dresser's Ombudsman for independent and confidential assistance.

14

# Questions and Answers

**Will I still be able to go to the Equal Employment Opportunity Commission (EEOC) or the National Labor Relations Board?**

Yes. The DRP applies to relief you may seek personally through the courts for a workplace dispute. You are still free to consult the appropriate state Human Rights Commission, the EEOC, the National Labor Relations Board or any other government regulatory agency regarding your workplace problem. Of course, we hope you will feel the DRP is so effective you will not need to go anywhere else.

**What's the difference between mediation and arbitration?**

In mediation, there is a neutral person who acts as a go-between for you and the Company. This person works to keep communication open and tries to help everyone involved find a solution. In arbitration, there is a neutral person who listens to both parties and then makes a final decision that binds both parties to a solution.

**How is arbitration different from a court trial?**

With arbitration, the decision is final; except in rare circumstances, it may not be reversed by subsequent proceedings. With a trial court decision, an appeal may be filed, causing lengthy delays. Also, an arbitration proceeding is usually much more informal than a case in court. The arbitrator is usually a lawyer or a person with an employee relations or legal background, who serves as a neutral party on a part-time basis. The proceeding is held in private offices instead of in a public courthouse. The biggest difference, however, lies in the reasonable cost of arbitration. Because arbitration is faster and less formal, it ends up costing much less to prepare the case.

**Does that mean I am limited in what I can get through arbitration?**

No. The arbitrator has the same authority as a judge in making awards to employees. That means, in arbitration, it is possible for you to seek or receive any award you might seek through the court system.

**What can I do to seek relief if I believe my legally protected rights have been violated?**

If you believe your legally protected rights have been violated, you may request legal consultation through the Employee Legal Assistance Plan, using any attorney you choose. If you are not able to resolve the issue internally, you may request an external proceeding. You will need to pay $50 to use a mediator or arbitrator. If you choose arbitration and it is determined that a legally protected right has been violated, you will recover the $50.

**How can I be sure of confidentiality if I call the DRP Helpline?**

First of all, you decide whether or not to tell the person at the Dresser DRP Helpline who you are. Then, if you do decide to give your name, you are speaking with a trained professional who operates under The Code of Ethics and Standards of Practice of The Ombudsman Association. You will receive independent and confidential assistance to help you, and you will be able to discuss the options

15

# Questions and Answers

available to you. If you request assistance such as an Internal Conference, you'll need to give permission to contact other people about your problem. Please note, however, that in certain rare instances, such as in the event of a serious threat of imminent harm, the Ombudsman may be required to disclose certain information you have shared.

**Dresser has some employees in organized bargaining units. Does the DRP apply to them?**
No. The DRP does not automatically apply to unionized employees. Bargaining unit employees are covered by dispute resolution or grievance procedures agreed upon during the collective bargaining process. The procedures for unionized employees vary from bargaining unit to bargaining unit, depending on the terms of the collective bargaining agreement.

**Why has Dresser implemented the DRP throughout the company?**
We want a program that operates for the benefit of all the employees and the Company. We want a program that reflects best practices in dispute resolution as well as the needs of our employees. This type of program has become a national model followed by many companies, and we believe it only makes sense to offer this successful program to eligible Dresser employees.

**Doesn't Dresser fund the DRP and pay the salaries of the Program's staff? How can the Program or its staff, including the Ombudsmen, truly be impartial?**
The Company does fund the DRP and pay the salaries of the Program's staff. The entire Program, however, is designed to operate independently and to protect confidentiality. Here's how it works:

A committee of senior executives is responsible for overseeing the Program. This committee includes key Business Unit Operational Managers, as well as representatives of the Legal department, Human Resources and the Dispute Resolution Program. As a result, no one manager or department can exert improper influence over the Program, and the Program operates independently, for the good of every employee and the entire Company.

In addition, the Program operates under the strict Code of Ethics and Standards of Practice of The Ombudsman Association. The Company has included those standards in the legal documents that authorize the creation of the Program, meaning that the Company is committing itself to operate the Program in keeping with those standards.

It is actually in the Company's best interest to make sure the Program provides independent and confidential assistance — otherwise, you will not use it, and the Company will not have the chance to address problems early and find resolution.

16

EXHIBIT 5



# Resolutions



Dispute Resolution Program

## Who is covered?



Most of the people working for Dresser Business Units are covered by the Dispute Resolution Program. This only employees not covered are:

- Those working outside the United States and not governed by U.S. laws; and
- Those who are covered by collective bargaining agreement and not specifically covered by the Dispute Resolution Program

Unless the specific examples noted above apply to you, you are automatically covered by the options is required if you:

- Apply for a job at a Dresser Business Unit;
- Accept employment;
- Continue your current employment.



If you have a work-related problem you can...

If an employee accepts or continues employment with any segment of Dresser, Inc., the employee and Dresser thereby agree to all provisions of the Dispute Resolution Program. This includes the requirement that any legal dispute not resolved through Options 1,2, or 3 be submitted to final and binding arbitration rather than through the courts or to a jury. This agreement covers any workplace dispute including claims of discrimination based on race, national origin, gender, religion, age or disability under any federal or state civil rights statute.

# How it works



The DRP has four options you can use in any order, depending on the nature of your dispute.

**The Open Door Option** is the option we encourage employees to use first, because it is fast and closest to the problem. It provides immediate access to your chain of command. You may also call the DRP Helpline for advice from Dresser's Ombudsman, or contact your Business Unit Human Resources Department or Corporate Employee Relations Director for advice, or to request an investigation.

**The Internal Conference Option** provides a setting for you to discuss your concerns with the Dresser Ombudsman and a Company representative. You might resolve the issue at this level, or you may choose to go back to the Open Door, or decide you want a neutral person to help you find a mutually agreeable solution through an internal mediation process. However, you may also choose to proceed to mediation or arbitration if your dispute concerns your legally protected rights.

**Mediation** gives you the opportunity to resolve your problem with assistance from a trained, independent mediator from outside the Company. The mediator makes suggestions for resolution, but does not decide how you will resolve the dispute … that is up to you and the Company.

**Arbitration** is a process in which you and the Company present your dispute to a neutral third party, an arbitrator, for a final and binding decision. The arbitrator makes a decision after both sides present their arguments. The arbitrator can award any remedy you might receive in a court of law.

The DRP uses three organizations that provide professional mediators and arbitrators:

• American Arbitration Association (AAA);
• Center for Public Resources (CPR); and
• Judicial Arbitration and Mediation Services (JAMS)

## Questions & Answers

**Who uses the DRP and for what kinds of problems?**
All levels of employees may use the DRP. You can resolve concerns about termination, conflicts with a co-worker, retaliation for raising a concern or complaint, disciplinary or supervisory issues, safety concerns, discrimination, racial or sexual harassment, unfair treatment and morale on the job.

## Internal Options
*Any Workplace Problem*

**① Open Door**
You can go directly to any of these resources:
• Supervisors
• Managers
• Human Resources
• Employee Relations
• Other Internal Resources

**② Internal Conference**
The DRP can help you access any of these resources:
• Open Door Resources
• Internal Resolution
• Internal Mediation
• External Resolution Options
• Customized Procedures

**Ombudsman via DRP Helpline
1-866-560-4951**

**What is the DRP Helpline?**
You may call the toll free DRP Helpline at 1-866-560-4951 to receive free, expert and confidential advice from Dresser's Ombudsman. You do not need to give your name in order to get help. You may remain anonymous and just ask questions. Or, you may wish to give your name, discuss all the details of your situation and be coached through the Open Door process. If and how you use the DRP Helpline is entirely up to you.

**What is an Ombudsman?**
Ombudsmen are trained professionals who operate under The Code of Ethics and Standards of Practice of The Ombudsman Association, designed to ensure independence, confidentiality and neutrality. They can answer your questions, act as a go-between, review your options, get the facts, help you "open doors," refer you to other resources and help you help yourself.

**What if my supervisor makes work difficult for me after I bring my dispute to the DRP?**
The Company forbids retaliation for using the DRP. If you feel someone is retaliating against you for using any of the options of the Program, contact a higher level in your chain of command, or the DRP Helpline for independent and confidential assistance.

## External Options
*Problems Involving Legally Protected Rights*

**You may choose external process if the dispute is based on legally protected rights**

**③ Mediation**
You may present your dispute to a neutral third party for help in resolving your dispute.

**AAA, CPR, or JAMS**

**④ Arbitration**
You may present your dispute to a neutral third party for a final, binding decision.

**Does having this Program mean I cannot sue Dresser?**
If you are covered by the Program and you file a lawsuit, Dresser attorneys will go before the court, tell the court of the Dresser Dispute Resolution Program, and ask that the case be dismissed and sent back to the Program.

**What can I do to seek relief if I believe my legal protected rights have been violated?**
If you believe your legally protected rights have been violated, you may request a legal consultation through the Employee Legal Assistance Program, using any attorney you choose. This Plan may help cover the cost of consulting with an attorney. Contact the Ombudsman for more details of the Plan.

**Will I still be able to go to the Equal Employment Opportunity Commission (EEOC) or the National Labor Relations Board?**
Yes. You can consult the appropriate state Human Rights Commission, the EEOC, the National Labor Relations Board or any other government regulatory agency regarding your workplace problem. Of course, we hope you will feel the DRP is so effective you will not need to go anywhere else for resolution.

EXHIBIT 6



If you have a work-related problem you cannot resolve on your own, or if you are responsible for handling or responding to employee concerns and would like assistance, we have a program that will help. It's called the Dresser, Inc. Dispute Resolution Program (DRP). Its purpose is to give you an improved process and flexible options for airing and settling almost every kind of workplace conflict... from minor, everyday misunderstandings to violations of legally protected rights.

**Dispute Resolution Program**

Actual Poster 16" X 24"

# EXHIBIT 7

# SECTION II: DAY-TO-DAY OPERATIONS



## LEGAL FRAMEWORK
### OF
### HIRING AND EMPLOYMENT

## DISPUTE RESOLUTION
## PROGRAM







# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CAROL THOMAS,
       Plaintiff,

v.

DRESSER, INC. - MASONEILAN,
       Defendant

Civil Action No. 05-10726 PBS

## DECLARATION OF ROBERT P. ROSE

I, Robert P. Rose, being on oath depose and say as follows:

1.     I presently am employed by Dresser, Inc. as the Information Technology Manager for its Avon, Massachusetts facility. In this position, I am responsible for the overall operation and maintenance of the computer network in the Avon facility.

2.     I am familiar with Carol Thomas. She previously worked in the Avon facility as a Human Resources Specialist. At the time her employment was terminated in August of 2004, the contents of the computer she used while she was employed, including her email folders, were exported, and stored into a file that is archived on the computer network and is accessible only to authorized personnel.

3.     Exhibit A is a true and accurate copy of an email regarding Dispute Resolution Booklets that was pulled from Carol Thomas's computer file.

4.     Exhibit B is a true and accurate copy of an email from David Gustin that was pulled from Carol Thomas's computer file.

5.     Exhibit C is a true and accurate copy of a Microsoft Word document dated April 27, 2001 that was pulled from Carol Thomas's computer file.

6.    <u>Exhibit D</u> is a true and accurate copy of a Microsoft Word document dated November 4, 2002 that was pulled from Carol Thomas's computer file.

7.    <u>Exhibit E</u> is a true and accurate copy of a Microsoft Word document, entitled "Dispute Resolution Program Agreement," that was pulled from Carol Thomas' computer file.

8.    <u>Exhibit F</u> is a true and accurate copy of a Microsoft Word document from James F. Riegler that was pulled from Carol Thomas' computer file.

Executed under the penalties of perjury on this 10th day of June, 2005.

Robert P. Rose

2

# EXHIBIT A

## Goyal, Kavita M. (Boston)

**From:** Thomas, Carol
**Sent:** Wednesday, July 14, 2004 7:46 AM
**To:** O'Neal, Krista
**Subject:** RE: Dispute Resolution Booklets

*Okay, the smaller ones would be fine. I include these booklets in the new hire packets along with the signature form prior to the employees' start date.*

-----Original Message-----
**From:** O'Neal, Krista
**Sent:** Tuesday, July 13, 2004 7:25 PM
**To:** Thomas, Carol
**Subject:** RE: Dispute Resolution Booklets

Do you need the bigger books or the smaller variety? We are out of the bigger books, but do not forget that they are on the Intranet.

-----Original Message-----
**From:** Thomas, Carol
**Sent:** Tuesday, July 13, 2004 2:46 PM
**To:** O'Neal, Krista
**Subject:** Dispute Resolution Booklets

*Hi Krista,*

*I'm not sure if you are the person I should be sending this request to however, if so, please forward 30 copies of the Dispute Resolution program to my attention at your earliest convenience.*

*Thanks!*

*Carol L. Thomas, H.R. Specialist*
*Masoneilan - Dresser Flow Solutions*
*85 Bodwell Street; Avon, MA 02322*
*Phone: (508) 427-8912  Fax: (508) 427-8911*
*Email:  Carol.Thomas@Masoneilan.com*

# EXHIBIT B

## Goyal, Kavita M. (Boston)

| | |
|---|---|
| **From:** | Gustin, David |
| **Sent:** | Monday, October 28, 2002 9:09 AM |
| **To:** | Appleton, Rex; Carbone, Vince; Akens, Cathy; Goulding, Joan; McGill, Lenora J.; McIntosh, Ray; McKimmie, Julee D.; Morrone, Frank; Nevins, Sheila; Parsons, Connie K; Ridolfi, Bill; Routhier, Loretta; Thomas, Carol |
| **Cc:** | Briggs, Ray; Fentem, Richard; Jezerinac, Dan; Kish, Calvin E; Mundy, John; Norman, Andrew; Vandelaar, John; Wolley, Charles S |
| **Subject:** | DRP Acknowledgements |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Due By:** | Friday, November 15, 2002 8:00 AM |
| **Flag Status:** | Flagged |

This is a reminder that ALL new hires (including all outside sales personnel) are to complete the Dresser Dispute Resolution Acknowledgement form as a condition of employment and you are to retain a copy as a permanent part of our employee records. There can be NO EXCEPTIONS!

Please verify by November 13, 2002 that the appropeiate forms are on file for all employees hired since since April 1 2001.

Thanks
David

1

# EXHIBIT C

**MASONEILAN**                                                        DRESSER, INC.

**DRESSER**
*Flow Control*

85 Bodwell Street  •  Avon, Massachusetts  •  508-586-4600  •  Fax 508-427-9212

## MEMORANDUM

**TO:**              **Janet Dalesio**

                     **Larry Swartz**

                     **Lowell Renner**

                     **Kenny Juncewicz**

                     **Jim Stares**

                     **Andrew Norman**

CC:

**FROM:**            **Carol Thomas**

**DATE:**            **April 27, 2001**

**SUBJECT:**         **Dispute Resolution Program**

We have been informed that all employees hired after the implementation of the Dispute
Resolution Program (in 1998) should have signed the attached form consenting to the
program at the time of employment.  We've been advised by the legal department that
these forms need to be signed as soon as possible.  Please have the following
employees read and sign the attached document.  Brochures explaining the program
are also attached.

Vinicio Beato
Keith Belanger
Chris Bittner
Louanne Boari
Jamie Bogumil
Art Butters
Henry Du
Asher Glaun
Afif Kaakani
Charles Kay
Matt McNamara
Thanh Nguyen
Allen Ovaginian
Carol Parker
Vladimir Shlain
Cheryl Wall
Mike Wrightington

If you have questions please give me a call.

BECKER  •  CONSOLIDATED  •  GROVE  •  LEDEEN  •  MASONEILAN  •  NIL-COR  •  TEXSTEAM  •  TK VALVE  •  WHEATLEY

# EXHIBIT D



Masoneilan®
**North American Operations**

# MEMORANDUM

| | |
|---|---|
| **TO:** | **Sean Kong** |
| **FROM:** | **Carol Thomas** |
| **DATE:** | **November 4, 2002** |
| **SUBJECT:** | **Dispute Resolution Program** |

We have been informed that all employees hired after April 1, 2001should have signed the attached form consenting to the Dispute Resolution Program at the time of employment. We've been advised by the legal department that these forms need to be signed as soon as possible. Please read and sign the attached document. Brochures explaining the program are also attached.

If you have questions please give me a call.

# EXHIBIT E



**Measurement
& Control**

# DISPUTE RESOLUTION PROGRAM
## AGREEMENT

I have received and read the Dresser, Inc. Dispute Resolution program information, effective April 10, 2001, as continued and adopted from the Halliburton Company Dispute Resolution Plan, as amended as of August 15, 1999.  I understand that if I choose to accept employment or continue employment with any Dresser, Inc. company, I will agree to all provisions of the Dispute Resolution Program.  This includes the requirements under the Program that any legal dispute between my employer and me be submitted to final and binding arbitration.  This means I waive any rights I may have to bring a lawsuit against my employer and to a jury trial regarding any such dispute, including for claims of discrimination based on race, national origin, gender, religion, age, or disability under any federal or state civil rights statute.

_____
Employee Signature

_____
Please Print Name

_____
Date

_____
Employee No. or SSN

EXHIBIT F



**James F. Riegler**
*Vice President Human Resources*

June 2001

**To:    All Dresser, Inc Non-union Represented Employees**

Re:    Dresser, Inc. Dispute Resolution Program

During the process of Dresser, Inc. being divested by Halliburton Company, each Dresser, Inc. business unit held employee meetings to discuss which business practices would change under the new ownership and which practices would remain the same. One item addressed in the meetings was the Dispute Resolution Program. Company representatives confirmed Dresser's commitment to continue, without interruption, this valuable process that was established and rolled out during Halliburton's ownership.

Now that the sale is complete Dresser, Inc. is in the process of republishing the brochures and manuals that describe and explain the Dresser, Inc. Dispute Resolution Program. Although there is very little difference between this program and the Halliburton program, the new publications will stress the program benefits and explain the minor process changes that have been customized to fit the Dresser, Inc. business unit structure.

Later this month you will receive a handout or see posters in your facility providing you with the new contact information as the Dresser, Inc. program picks up where Halliburton left off. On July 1, 2001 the Dresser, Inc. program will be operating independently from Halliburton. We are confident that you will find this program valuable and easy to use.

In the months that follow, Dresser, Inc. will be mailing you the updated Dispute Resolution Program manuals that summarize the program features, as well as a re-published version of the Plan Rules. We encourage you to read the documents carefully, so that you will be able to take full advantage of the programs benefits.

Again, welcome to the "New" Dresser, Inc. and we hope that you will take advantage of the benefits offered by the Dresser, Inc. Dispute Resolution Program.

Very truly yours,

James F. Riegler
Vice President Human Resources